UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PUGET SOUNDKEEPER ALLIANCE, <br><br> Plaintiff, <br><br> v. <br><br> UNION PACIFIC RAILROAD COMPANY, <br><br> Defendant. | Case No. 2:20-cv-01483-RSL <br><br> CONSENT DECREE |

## I.   STIPULATIONS

WHEREAS, Plaintiff Puget Soundkeeper Alliance filed a complaint against Defendant Union Pacific Railroad Company ("Union Pacific") alleging violations of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 et seq., relating to discharges of stormwater associated with industrial activities and other pollutants from Union Pacific's facility, known as the Argo Yard, located at 402 S. Dawson St., Seattle, WA (the "Facility") and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs.

WHEREAS, Puget Soundkeeper Alliance and Union Pacific agree that settlement of these matters is in the best interest of the parties and the public, and that entry of this Consent Decree is the most appropriate means of resolving this action.

CONSENT DECREE
No. 2:20-cv-01483-RSL
1

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

WHEREAS, Puget Soundkeeper Alliance and Union Pacific stipulate to the entry of this Consent Decree without trial or adjudication of any issues of fact or law regarding Plaintiff's claims and without any admissions other than those expressly provided in this Consent Decree.

DATED this 29th day of July, 2021

SQUIRE PATTON BOGGS (US) LLP

By  s/*Carolyn McIntosh*
Carolyn McIntosh, *pro hac vice*
Alexander M. Arensberg, *pro hac vice*
Attorneys for Defendant
Union Pacific Railroad Company

SMITH & LOWNEY PLLC

By  s/*Marc Zemel*
Marc Zemel, WSBA #44325
Attorneys for Plaintiff
Puget Soundkeeper Alliance

JOYCE ZIKER PARTNERS PLLC

By  s/*Matthew Stock*
Matthew Stock, WSBA #40223
Attorneys for Defendant
Union Pacific Railroad Company

PUGET SOUNDKEEPER ALLIANCE

By _____
Sean Dixon
Executive Director
Puget Soundkeeper Alliance

THE UNION PACIFIC RAILROAD COMPANY

By _____
David P. Young
VP – EHS and Compliance

## I. ORDER AND DECREE

THIS MATTER came before the Court upon the foregoing stipulations of the parties. Having considered the stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1. This Court has jurisdiction over the parties and subject matter of this action.

2. Each signatory for the parties certifies for that party that he or she is fully authorized by the party or parties he or she represents to enter into the terms and conditions of

this Consent Decree and to legally bind the party or parties, their successors in interest and assigns of the parties to it.

3.      This Consent Decree applies to and binds the parties and their successors in interest and assigns.

4.      Except as expressly provided for herein, this Consent Decree and any injunctive relief ordered within will only apply to those portions of the operation, oversight, or both by Union Pacific of the Facility, which is currently subject to National Pollutant Discharge Elimination System Permit No. WAR001155 (the "NPDES permit") and that are subject to citizen enforcement under the CWA.

5.      This Consent Decree is a full and complete settlement and release of all the claims alleged in the complaint for the alleged acts or omissions, existing as of the date of entry of this Consent Decree, arising from operations of the Facility against Union Pacific, its employees, agents, successors and assigns. Upon termination of this Consent Decree, these claims will be released and dismissed with prejudice.

6.      Union Pacific does not admit any violation of or non-compliance with the NPDES permit or the CWA and the Court's Order is not a finding of any violation or non-compliance. The parties agree that the obligations undertaken under Paragraphs 7, 8 and 9 are in full and complete satisfaction of all the claims covered by this decree.

7.      Injunctive Relief:

   a.   Within sixty (60) days of entry of this Consent Decree, Union Pacific will revise the Stormwater Pollution Prevention Plan ("SWPPP") site map for the Facility as follows:

   1. Union Pacific will add surface flow direction arrows for each of the following areas of the Facility:

      i. The drainage basins for Outfalls SW-001 through 006;
      ii. Area VM-1;

       iii.  Area VM-8; and

       iv.  Area DTL-1.

2. For purposes of implementing this Consent Decree, Union Pacific will clarify the boundaries of the Facility that are subject to citizen enforcement under the CWA, including the use of a single color or label type to denote CWA-regulated areas, including clarification that access roads and rail lines associated with vehicle maintenance and/or equipment cleaning operations are within the boundary that is subject to citizen enforcement of the CWA.

3. Union Pacific will perform these revisions with the assistance of a qualified consultant and share a copy with Puget Soundkeeper Alliance upon their completion.

b. Within seventy-five (75) days of entry of this Consent Decree, with assistance of a qualified stormwater consultant, Union Pacific will complete a comprehensive SWPPP evaluation for the Facility and the consultant will prepare a written report documenting the SWPPP evaluation and the consultant's recommendations, including but not limited to the following issues:

1. Whether any of the Facility areas identified above at Section I.7.a.2 of this Consent Decree discharge stormwater to surface waters via a municipal stormwater system or by other conveyance;

2. Whether "all known, available and reasonable methods of prevention, control, and treatment" ("AKART") are applied at the Facility, as that term is used in the NPDES permit, and provide any recommendations for additional Best Management Practices ("BMP") to achieve AKART, if necessary.

      3. Additional locations, if any, where MetalZorb catch basin inserts should be implemented at the Facility, including catch basin number and brief location description.

  c. Within seventy-five (75) days of entry of this Consent Decree, Union Pacific will provide Puget Soundkeeper Alliance with a copy of the SWPPP report, described above at Section I.7.b. of this Consent Decree. Puget Soundkeeper Alliance and Union Pacific will then engage in a collaborative comment process regarding the SWPPP report as follows:

    1. Union Pacific will provide Puget Soundkeeper Alliance with two thousand dollars ($2,000) to review Union Pacific's SWPPP report with assistance of qualified personnel. Union Pacific will make this payment to Puget Soundkeeper within thirty (30) days of entry of this Consent Decree.

    2. Within thirty (30) days of Puget Soundkeeper Alliance's receipt of the SWPPP report, Puget Soundkeeper Alliance may provide Union Pacific with a written response to the SWPPP report, including comments, questions and additional recommendations for SWPPP revisions.

    3. If Puget Soundkeeper Alliance provides a written response to Union Pacific's consultant's SWPPP report, then within thirty (30) days of receipt of Puget Soundkeeper Alliance's response or such additional time as the parties agree upon, Union Pacific will consider in good faith and provide Puget Soundkeeper Alliance with written answers to each question within the scope of the issues addressed in the Consent Decree, recommendations or any other comments.

    4. Within fifteen (15) days of completion of this comment process, Union Pacific will incorporate all recommendations contained in Union Pacific's

consultant's report and any additional revisions agreed to through the comment process described herein, if any.

d. On a monthly basis, Union Pacific will inspect the perimeter of the Facility for off-site runoff and document the inspections in a log. In the event a location of potential off-site runoff is observed, Union Pacific will promptly eliminate the potential for off-site runoff and describe in writing the actions taken in the log.

e. Notice to Puget Soundkeeper Alliance: For the term of the Consent Decree, Union Pacific will provide Puget Soundkeeper Alliance on a quarterly basis and in electronic format, copies of all reports submitted to Ecology under the ISGP and all written communications to or from Ecology related to corrective actions, permit modification requests, time extension requests, and compliance or noncompliance with the NPDES permit, along with copies of the monthly logs produced pursuant to Section 7.d. of this Consent Decree.

f. Union Pacific agrees to provide Puget Soundkeeper Alliance with $2,000 for reasonable attorney's fees necessary to monitor compliance with this Consent Decree, including review of Union Pacific's submissions under this Consent Decree. Union Pacific will make this payment to Puget Soundkeeper within thirty (30) days of entry of this Consent Decree. This amount is in addition to the amounts identified at Sections 7.c.1., above, and 9.a, below.

8. Payment in Lieu of Penalty:

a. Within thirty (30) days of entry of this Consent Decree by the Court, Union Pacific will make a payment in the amount of Seventy-five Thousand Dollars ($75,000.00) to the Rose Foundation for Communities and the Environment for projects to improve the water quality of Puget Sound, as described in <u>Attachment 1</u> to this Consent Decree. Payment will be made to the order of and delivered to: The Rose Foundation for Communities and the Environment, Attention: Tim Little, 6008 College Avenue, Suite 10, Oakland, CA 94618, and shall bear the

notation "Puget Soundkeeper Alliance v. Union Pacific Railroad Company, Clean Water Act Settlement," with a copy provided to Plaintiff at the time payment is made.

9. Costs of Litigation:

a. Within thirty (30) days of entry of this Consent Decree, Union Pacific will pay Plaintiff's litigation expenses incurred in this matter in the amount of $52,000. Payment will be made to the order of and mailed to Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, Attn: Marc Zemel.

10. The payments described under Sections 7.f, 8 and 9 above shall be in full and complete satisfaction of any claims Puget Soundkeeper Alliance has or may have against Union Pacific, either legal or equitable, and of any kind or nature whatsoever, for fees, expenses, and cost incurred in this litigation, or for civil penalties, or payments in lieu of civil penalties pursuant to a supplemental environmental project under the CWA.

11. A force majeure event is any event outside the reasonable control of Union Pacific that causes a delay in performing tasks required by this Consent Decree that cannot be cured by due diligence. Delay in performance of a task required by this Consent Decree caused by a force majeure event is not a failure to comply with the terms of this Consent Decree, provided that Union Pacific timely notifies Plaintiff of the event; the steps that Union Pacific will take to perform the task; the projected time that will be needed to complete the task; and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

Union Pacific will notify Plaintiff of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than fifteen (15) days after the occurrence of the event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include:

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

a. Acts of God, war, insurrection, or civil disturbance;

b. Earthquakes, landslides, fire, floods;

c. Actions or inactions of third parties over which defendant has no control;

d. Unusually adverse weather conditions;

e. Restraint by court order or order of public authority;

f. Strikes;

g. Pandemic;

h. Any permit or other approval sought by Union Pacific from a government authority to implement any of the actions required by this Consent Decree where such approval is not granted or is delayed, and where Union Pacific has timely and in good faith sought the permit or approval; and

i. Litigation, arbitration, or mediation that causes delay.

12. This Court retains jurisdiction over this matter. And, while this Consent Decree remains in force, this case may be reopened without filing fee so that the parties may apply to the Court for any further order that may be necessary to enforce compliance with this Consent Decree or to resolve any dispute regarding the terms or conditions of this Consent Decree. In the event of a dispute regarding implementation of, or compliance with, this Consent Decree or any of its requirements, the parties agree to first attempt to cooperatively resolve the dispute by meeting to discuss the dispute and confer on suggested response measures. Parties agree to pursue efforts for cooperative resolution in good faith for at least sixty (60) days before taking any action to enforce this decree. The provisions of CWA section 505(d), 33 U.S.C. § 1365(d), regarding awards of costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, will apply to any proceedings seeking to enforce the terms and conditions of this Consent Decree.

13. The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. EPA.  Therefore, upon the filing of this Consent Decree by the parties, Plaintiff will serve copies of it upon the Administration of the U.S. EPA and the Attorney General, with a copy to Union Pacific.

14. This Consent Decree will take effect upon entry by this Court.  It terminates two (2) years after entry.

15. All parties have participated in drafting this Consent Decree.

16. This Consent Decree may be modified only upon the approval of the Court.

17. If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either party.  The parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Consent Decree.

18. All communications between the parties shall be through legal counsel. Notifications or copies required by this Consent Decree to be made to Plaintiff shall be delivered electronically to:

   Puget Soundkeeper Alliance
   Attn: Katelyn Kinn
   130 Nickerson Street, Suite 107
   Seattle, WA 98109
   E-mail: katelyn@pugetsoundkeeper.org

Notifications required by this Consent Decree to be made to Union Pacific shall be mailed to:

   Robert C. Bylsma
   Sr. Regional Environmental Counsel

CONSENT DECREE

9

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

1  Union Pacific Railroad Company
   9451 Atkinson Street
2  Roseville, CA 95747
   E-mail: rcbylsma@up.com
3

4  Carolyn L. McIntosh
   Squire Patton Boggs
5  1801 California Street, Suite 4900
   Denver, CO 80202
6  E-mail: Carolyn.mcintosh@squirepb.com

7       Either party may change its designee for notice pursuant to this paragraph by written

8  notification to the other party. A notice or other communication regarding this Consent Decree
9
   will be effective when received unless the notice or other communication is received after 5:00
10
   p.m. on a business day, or on a day that is not a business day, then the notice will be deemed
11

12 received at 9:00 a.m. on the next business day. A notice or other communication will be deemed

13 to have been received: (a) if it is delivered in person or sent by registered or certified mail or by

14 nationally recognized overnight courier, upon receipt as indicated by the date on the signed

15 receipt; or (b) if the receiving party rejects or otherwise refuses to accept it, or if it cannot be

16
   delivered because of a change in address for which no notice was given, then upon that rejection,
17
   refusal, or inability to deliver.
18

19      DATED this  24th  day of  September, 2021.
20

21                                        _____
                                          HON. ROBERT S. LASNIK
22                                        UNITED STATES DISTRICT JUDGE

23
   Presented by:
24

25

26

CONSENT DECREE                                            Smith & Lowney, p.l.l.c.
                                                          2317 East John St.
       10                                                 Seattle, Washington 98112
                                                          (206) 860-2883

| | |
|---|---|
| 1 | SQUIRE PATTON BOGGS (US) LLP |
| 2 | By  s/*Carolyn McIntosh* |
| 3 | Carolyn McIntosh, *pro hac vice*<br>Alexander M. Arensberg, *pro hac vice* |
| 4 | Attorneys for Defendant<br>Union Pacific Railroad Company |

SQUIRE PATTON BOGGS (US) LLP

By  s/*Carolyn McIntosh*
Carolyn McIntosh, *pro hac vice*
Alexander M. Arensberg, *pro hac vice*
Attorneys for Defendant
Union Pacific Railroad Company

JOYCE ZIKER PARTNERS PLLC

By   s/*Matthew Stock*
Matthew Stock, WSBA #40223
Attorney for Defendant
Union Pacific Railroad Company

SMITH & LOWNEY PLLC

By   s/*Marc Zemel*
Marc Zemel, WSBA #44325
Attorney for Plaintiff Puget Soundkeeper Alliance

PUGET SOUNDKEEPER ALLIANCE

By   s/*Katelyn Kinn*
Katelyn Kinn, WSBA #42686
Attorney for Plaintiff Puget Soundkeeper Alliance

CONSENT DECREE

11



July 19, 2021

Peter McVeigh
United States Department of Justice
Environment & Natural Resources Division
Law and Policy Section
P.O. Box 7415
Washington, D.C. 20044-7415

Re: Puget Soundkeeper Alliance v. Union Pacific Railroad Company (2:20-cv-01483-RSL)

Dear Mr. McVeigh,

This letter is intended to provide assurance that I have received the proposed Consent Decree between Puget Soundkeeper Alliance and Union Pacific Railroad Company ("Union Pacific"), and that I am authorized by my Board of Directors to make the following binding commitments on behalf of the Rose Foundation.

1) I understand that the Rose Foundation should receive funds from Union Pacific as specified in the proposed Consent Decree.
2) The Rose Foundation shall only use these Union Pacific funds for projects designed to improve the water quality of Puget Sound.
3) Due to the disproportionate impact of pollution to low-income neighborhoods and communities of color, in selecting grantees the Rose Foundation shall prioritize projects which benefit vulnerable population.
4) After funds have been disbursed, the Rose Foundation shall send a report to the Justice Department, the Court and the Parties setting forth the recipient and purpose of the funds and demonstrating conformance with the nexus of the Consent Decree.

**Rose Foundation for Communities and the Environment**
The Rose Foundation is a 501(c)(3) public charity (tax ID#94-3179772). Its mission is to support grassroots initiatives to inspire community action to protect the environment, consumers and public health. To fulfill this mission, the Rose Foundation conducts the following activities:

- Raise money to award as grants to qualified non-profit organizations conducting charitable operations. The Foundation does not support political lobbying activities prohibited by Section 501(c)(3) of the IRS Code, and no portion of the Union Pacific funds shall be used to support any political lobbying activities whatsoever.
- Work directly in schools and in the community to encourage environmental stewardship and civic participation.

- Help government efforts to control pollution and protect the environment by encouraging community engagement in local, state and federal research and policy development.

Within this broad range of activities, all of the Rose Foundation's work revolves around one or more of the following strategic themes:

- Build and maintain a bridge between the community and organized philanthropy.
- Protect the natural environment, public health, and community and consumer rights.
- Promote collaboration between labor, environmental, business, consumer and social interests.
- Cultivate a new generation of environmental stewards and social policy leaders.
- Respect the inalienable rights protected by our nation's constitution, and the essential human rights to clean air, clean water, and individual dignity and privacy.

The Rose Foundation is governed by a Board of Directors.  Grant applicants are required to submit written proposals, which must include at a minimum specific information about the goals, activities and projected outcomes of the proposed project, background about the charitable applicant, budget information, and a specific funding request. The Foundation may require additional information in order to fully evaluate the application. Applications are first screened by Foundation staff. Staff then makes recommendations to the Foundation Board for action. The Foundation requires all projects to submit written reports within one year of receipt of the grant award describing work conducted under the grant, thereby providing an accountability mechanism over funds awarded. Annual audits by the certified public accounting firm Maze and Associates are posted on the Foundation's website [www.rosefdn.org](www.rosefdn.org).

I hope this provides you with the information you require.  Please do not hesitate to contact me with any questions, or for additional information at (510) 658-0702 or tlittle@rosefdn.org.

Sincerely,

*[signature]*

Tim Little, Executive Director